kaw

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **THE BENNINGTON STATE BANK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| vs. ) | Case No. 07-4021-JAR |
| ) | |
| ) | |
| **KAN-TEX CULINARY, L.L.C., et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

The Court now considers plaintiff Bennington State Bank's ("BSB") Motion in Limine (Doc. 62). For the reasons set forth below, plaintiff's motion in limine is denied. BSB brought an action against defendants Leonard H. Hammer, Jr., Kan-Tex Culinary, LLC, and Kan-Tex Steakhouse, Inc., to recover interest and money owed on a promissory note. The entities have since filed for bankruptcy leaving Leonard H. Hammer, Jr., as the sole defendant. Mr. Hammer has filed a counter-claim against BSB claiming that the bank violated its duty of good faith and fair dealing required in every contract with the Uniform Commercial Code by K.S.A. § 84-1-203. BSB now seeks to limit the evidence Mr. Hammer may produce.

**Background**

This action began in state court and has acquired and lost many defendants on its way. Currently, only one defendant remains—Mr. Hammer. In fact, the only issue remaining for trial is whether BSB breached the implied covenant of good faith and fair dealing under K.S.A. § 84-1-203.

The parties entered into an agreement in November 2004 in which BSB loaned the defendants $1,730,000 to be repaid at an interest rate of 6.5% per annum to build and finance a restaurant.  To secure the loan, BSB placed a mortgage on the property and retained a security interest in all business inventory, machinery, equipment, accounts, chattel paper, assignment of rents, instruments, and other collateral.  During the construction of the restaurant, the loan accrued interest.  The defendants made some payments to reduce the interest, but for the most part, failed to substantially reduce the debt.  After construction, the parties intended to negotiate long-term financing options and for defendants to obtain a loan from the Small Business Administration ("SBA").  During the negotiations, the parties communicated by letter.  In those letters, BSB represented that it would release the certificate of deposits ("CDs") held as collateral once the SBA approved funding.  The November agreement, however, provides that the CDs were collateral for the loan.

After granting extensions to obtain the SBA loan and to sign the long-term agreement, BSB, on June 13, 2006, sent Mr. Hammer and the Steakhouse defendants a letter stating that the loan was in default.  The letter stated that BSB would freeze all accounts it held for the defendants and set off certain amounts to reduce the loan obligation.  On June 14, 2006, the freeze on the defendants' accounts was released to facilitate the SBA loan.  The SBA loan was consummated and funded in the amount of $724,000, after which BSB reinstated the freeze.  Because long-term financing was never accomplished, BSB then set off the CDs worth $150,000 that were maintained with the bank, rather than returning them to Mr. Hammer as explained in its letters.  Additionally, BSB requested disbursement of the insurance proceeds in the amount of $49,649.40, which was held in escrow for the repairs of the restaurant and until the SBA loan

funded, and set off that amount on the loan.

According to Mr. Hammer, BSB breached its duty of good faith and fair dealing by refusing to use a portion of the loan received from the SBA to reduce the interest accumulated on the outstanding loan with the bank. Mr. Hammer contends that BSB acted in bad faith by refusing to use a portion of the CDs to pay the interest on the loan, and that BSB froze the defendants' accounts to "force behavior" on their part. Mr. Hammer further argues that BSB later released the freeze on the defendants' accounts because, prior to the SBA loan closing, BSB verified to the SBA that the defendants were not in default or at risk of foreclosure. Defendants claimed that BSB's actions have deprived them of working capital, and that they have been damaged in an amount reasonably believed to be over $50,000.

BSB seeks to prevent the admission of the evidence of set offs, claiming that the information is irrelevant and a waste of time. BSB argues that it had the contractual right to set off the accounts and proceeds of the defendants, as stated in the November 2004 agreement. BSB also seeks to prevent the admission of evidence that it made misrepresentations to the SBA to assure that the loan would be disbursed.

**Applicable Law**

Federal Rule of Evidence 401 provides: "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Evidence 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of

cumulative evidence." The trial court has wide discretion in determining whether to exclude relevant evidence under Rule 403.[1]

K.S.A. § 84-1-203 provides that "[e]very contract or duty within the uniform commercial code imposes an obligation of good faith in its performance and enforcement." Good faith is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing."[2] This obligation extends to security agreements under Article 9,[3] and the modification of ongoing agreements.[4] The test for this claim is subjective.[5] To succeed, defendants must offer proof of dishonesty by the bank.[6]

Mr. Hammer seeks to introduce the evidence at issue to show that BSB acted in bad faith in not entering into long-term financing. The evidence of the set offs is relevant to detail BSB's actions throughout the negotiations process, including the evidence of the June 13 set offs, because that evidence has the tendency to show that BSB knew that the defendants were in default and that foreclosure was imminent. Moreover, if defendants were in default, the SBA loan would not have been funded and defendants' obligation to the bank would not have been reduced. Thus, evidence regarding BSB's representations to the SBA is relevant to show that BSB acted in bad faith to assure that the SBA loan would be funded to its benefit. Set off on the CDs with the bank is relevant under Rule 401 to show that the CDs could have been used, as Mr.

---

[1] *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000).

[2] K.S.A. § 84-1-201(20) (amended 2007).

[3] *Pedi Bares, Inc. v. First Nat'l Bank of Neodesha*, 575 P.2d 507, 511 (Kan. 1979).

[4] *A&G Constr. Co. v. Reid Bros. Logging Co.,* 547 P.2d 1207, 1217 n.19 (Alaska 1976).

[5] *Gillenwater v. Mid-American Bank & Trust Co.*, 870 P.2d 700, 704 (Kan. Ct. App. 1994).

[6] *Id.*

Hammer states, to pay the interest on the loan. BSB did not use the CDs to pay the interest, but did set off the amount in those accounts when it found that defendants would not enter into long-term financing. As to the insurance proceeds, that evidence is relevant to establish that BSB acted in bad faith and breached its obligation to fairly deal with defendants. Mr. Hammer and the BSB agreed that the defendants would hold the proceeds in escrow, but after the failure of the parties to find an amicable agreement, BSB requested the proceeds and set off the debt.

Finally, the evidence is not a waste of time as BSB suggests. In fact, Mr. Hammer has not come forth with much more than what the bank seeks to eliminate. Furthermore, the jury would not be confused nor is the admission of this evidence a waste of time if it is the only evidence that may show Mr. Hammer's claim. Finally, most of the evidence that Mr. Hammer seeks to advance is already in the record and can simply be referred to at trial. And, as Rule 403 "'is an extraordinary remedy that should be used sparingly,'"[7] and evidence weighed according to Rule 403 should be given "its maximum reasonable probative force and its minimum reasonable prejudicial value,'"[8] the Court finds the evidence admissible.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion in Limine (Doc. 62) is **DENIED**.

**IT IS SO ORDERED.**

Dated this   13th   day of November 2007.

---

[7] *Mendelsohn v. Spring/United Mgmt. Co.,* 466 F.3d 1223, 1231 (10th Cir. 2006) (quoting *United States v. Roberts*, 88 F.3d 872, 880 (5th Cir. 1996)).

[8] *Id.* (quoting *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000)).

      S/ Julie A. Robinson

**Julie A. Robinson**
**United States District Judge**